THE DOUGHERTY-MOSS LUMBER COMPANY, Appellant, v. E. P. CHURCHILL et al., Respondents.

Kansas City Court of Appeals, November 6, 1905.

1. **PRACTICE, TRIAL AND APPELLATE: Before the Court: Evidence: Instructions.** Where in a trial before the court there is a failure of the parties to ask instructions, and the evidence is without conflict, the issues of law presented by the pleadings and evidence will be reviewed by the appellate court.

2. **MECHANICS' LIENS: Landlord and Tenant: Substantial Improvements: Leasehold and Fee.** The lessee in the making of ordinary repairs with the consent of his lessor will not subject any more than the leasehold estate to a mechanics' lien; but where the lessor contracts with the lessee for improvements of substantial benefit to the estate, such, for instance, as converting a hotel into a theater, contractors are entitled to liens for their unpaid accounts against the estate of both the lessee and the lessor.

3. — —: ———: **Contractor and Agent: Pleadings: Variance.** The contract of a lessor binding the lessee to make certain improvements of a substantial character on the leased premises does not make the lessee a contractor within the meaning of the mechanics' lien law, but a mere agent of the lessor; and, though the pleadings treat him as a contractor, yet, where this treatment does not mislead the lessor as to the cause of action the variance will not be fatal.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

REVERSED AND REMANDED.

*Vories & Vories* and *Willard P. Hall* for appellant.

(1) No declarations of law were necessary to enable this court to review the action of the trial court. Price v. Merritt, 55 Mo. App. 640; Gage v. Averill, 57 Mo. App. 111; State v. Mackey, 55 Mo. 51; Ford v. Cameron, 24 Mo. App. 467; Kronenberger v. Hoffner, 44 Mo. 185; State ex rel. v. Cummings, 151 Mo. 49. (2) Upon

the undisputed facts, and upon the facts as found by the trial court, said court should have declared and adjudged a mechanic's lien against the interest, i. e., the fee of the Center Building Company in the lots of ground in evidence. The mechanic's lien statute is remedial and should be liberally construed. Dewitt v. Smith, 63 Mo. 263; Hicks v. Schofield, 121 Mo. 381; Walden v. Robertson, 120 Mo. 38; Dugan etc. Co. v. Gray, 114 Mo. 497; Supply Co. v. Light and Power Co., 75 Mo. App. 622; Construction Co. v. Jones, 60 Mo. App. 1. (3) Where the lessor in the lease obligates the lessee to make specific improvements upon the leased premises, or therein even authorizes and consents that the lessee should make specific improvements upon the leased premises, which are for the immediate use and benefit of the lessor—not necessarily solely for his said use and benefit, but for his immediate use and benefit—though also for the benefit and use of the lessee, and the lessee makes said improvements, then both the lessor's interest in the premises and also the lessee's interest therein are subject to a mechanic's lien for the labor and materials going into said improvements. O'Leary v. Roe, 45 Mo. App. 567; Lumber Co. v. Nelson, 71 Mo. App. 110; Hall v. Parker, 94 Pa. St. 109; Henderson v. Connelly, 123 Ill. 98; Hill v. Gill, 40 Minn. 441; Barkley v. Wainright, 86 Pa. St. 191; Carey v. Lumber Co., 187 Ill. 203.

*C. F. Strop* for respondent.

(1) It is not contended the declarations of law are necessary to enable the appellate court to review the action of the trial court. But it is the law that if declarations are not given and the judgment can be sustained upon any theory, it is the duty of the appellate court to sustain the judgment of the trial court. It is unnecessary to cite authorities upon this point. (2) It is not disputed that the mechanic's lien statute is remedial in its nature. However, to justify the application

of the statute it is necessary that the party bring himself within the statute. (3) The appellant in this court seeks a reversal upon the theory that Churchill and the Lyric Theater Company are the agents of the Center Building Company in the construction of the improvements referred to. The petition was not founded upon that theory, nor was the case tried upon that theory in the circuit court. The petition charged that Churchill and the Lyric Theater Company were the subcontractors and the Center Building Company the original contractors. No claim was made in the trial court or in the petition and no theory was presented by the petition that either Churchill or the Lyric Theater Company was agent of the Center Building Company. It is a settled rule in this State that the case must be tried in the appellate court, first, upon the theory made by the petition; second, upon the theory advanced in the trial court. (4) The authorities cited by appellant to the effect that where the vendee or lessee is required to erect specific improvements by the terms of the contract of sale or of lease the interests of both the vendor and vendee, or the lessor and lessee, may be charged with the lien. This proposition of law even under the authorities cited is not correct unless there is a further obligation on the part of the lessor or vendor to pay said lessee or vendee for said improvements. (5) It is the fundamental rule of law governing mechanics' liens that the materialman or subcontractor, or even the original contractor, must ascertain, at his peril, the state of the title of the person with whom he is contracting and for whom he is furnishing material and labor. In other words, unless the Center Building Company contracted with some person for the furnishing of the material which was furnished in this case there can be no lien against the fee. Planing Mill Co. v. Brundage, 25 Mo. App. 268; Cling v. Railway, 4 Mo. App. 574; Hartman v. Railway, 84 Mo. 602. (6) If there is no agreement authorizing a lessee to make re-

pairs or improvements at the expense of the lessor, there can be no lien against the fee for improvements made by the lessee. Marble Granite Co. v. Handlan, 85 Mo. App. 313. Especial attention is called to this case. It is directly in point, decisive and controlling. The following further authorities fully sustain this case and present the unbroken weight of authority: Koenig v. Mueller, 39 Mo. 166; Conant v. Breckett, 112 Mass. 18, and cases cited; Cornell v. Barney, 94 N. Y. 394; Judson v. Stephen, 75 Ill. 256; Mills v. Matthews, 7 Md. 315; Johnson v. Dewey, 36 Cal. 623; McClintock v. Criswell, 67 Pa. State 183; Louer v. Bandow, 43 Wis. 556; Barkley v. Wainwright, 86 Pa. State 196.

JOHNSON, J.—Action to enforce a mechanic's lien. On October 3, 1903, the Center Building Company, the owner in fee of lots one and two in block five of Smith's addition to the city of St. Joseph, entered into a contract in writing, under which it demised certain portions of the premises to the defendant Churchill for a period of ten years. The property is located in the business center of the city, and at the time stated was improved by a three-story brick business building. The north forty feet of the building which faced west on Sixth street and extended east one hundred and twenty feet had been occupied by a hardware concern; the first floor and basement of the adjoining twenty feet by a clothing firm; the remainder of the building, the entire frontage of which is one hundred and twenty feet, had been used as a hotel. The premises rented to Churchhill under the contract mentioned consisted of the second and third stories of the whole building and a space upon the first floor about forty by twenty-five feet in dimensions, fronting on Sixth street. The following are some of the stipulations contained in the contract: "Said premises are to be used during the term of this lease, by the said lessee, for theater purposes. The space on the first floor, above described, is to be used as a lobby and

passageway to the second and third floors, and to that end the lessee shall have the right to construct such stairways and box-office therein as he may find necessary, and the lessee shall have the right to remodel and reconstruct the second and third floors," to provide an auditorium with balconies, stage, dressing-rooms and appurtenances. The right was also given to remove a portion of the roof for the construction thereon of an auxiliary building called a "dog house" to shelter the appliances used in suspending and shifting scenery for the stage. "All improvements made by the said lessee as aforesaid shall be at his own expense and on his own account" and under the direction and supervision of an architect, chosen by the lessor, whose judgment and decision "as to what is necessary for the purpose of properly preserving the walls or roof of said premises or support the same . . . shall be absolute and final upon both parties." The right was given to the lessee to use, in the new construction, material derived from the wreckage of the old and of that not so used certain portions were to belong to the lessee and the remainder to the lessor. "The obligation to pay rent shall not commence until January 1, 1904, unless the aforesaid lessee is able to get said premises in condition for operating a theater before said date," in which latter event the rent began from the date of completion. The amount of rent for the first five years was fixed at $3,600 per year and thereafter at $4,500 per year, payable in monthly installments. "At the termination of this lease said lessee agrees to surrender to the said lessor possession of the premises so leased in as good condition as he received the same, considering the alterations above provided for and the usual wear excepted. Said lessee may sublet the premises herein leased to such corporation as he may hereinafter form or cause to be formed for the purpose of operating a theater therein, but the lease so executed by said lessee to such corporation shall be by him assigned to said lessor as security," etc.

It appears that shortly after making this contract Churchill procured the incorporation of the defendant, the Lyric Theater Company and assigned to it the contract. Churchill owned all of the capital stock but gave to two other persons one share each to qualify them as incorporators and directors. The corporation thus formed proceeded in its name, under the management of Churchill, to make the improvements required by the contract. It purchased on its account the necessary lumber from plaintiff, but failed to pay in full the obligation so incurred. Plaintiff sued to recover the amount due ($1,421.80), and to have the same adjudged a lien both upon the leasehold and reversionary interest. A jury was waived and the court, after hearing the evidence, entered personal judgment against the theater company for the debt and adjudged the same a lien upon the leasehold estate, but found in favor of Churchill and the Center Building Company. No declarations of law were asked by any of the parties. Plaintiff appealed.

The evidence disclosed that the reconstructions contemplated by the contract were completed at a cost of twenty thousand dollars. It does not appear what the rental value of the premises was, either before or after the alterations of the building. There is no conflict in the evidence. Most of the facts detailed are taken from an agreed statement made by the parties. No question is raised relative to the regularity of the proceedings to enforce the lien. Respondent concedes, and we think rightly, that notwithstanding the failure of the parties to ask declarations of law, the issues of law presented by the pleadings and evidence are before us for determination. Those issues relate to the right asserted by plaintiff to a lien against the fee.

As between the lessor and the lessee, the former was by the contract exempted from liability on account of the proposed alterations, and there is nothing in the instrument from which it may be implied that the lessee was authorized to bind personally the lessor as his prin-

cipal. The main question therefore is, did the lessor by implication of law constitute the lessee its agent for the purpose of subjecting the reversion to the liens of materialmen and workmen, who would furnish material and labor for the improvements for which the lessee under the contract was bound to pay. The law implies an intention on the part of the lessor to so burden his interest from the authority given by him to the lessee to make improvements that clearly. effect a substantial betterment of the reversion. We are not to be understood as holding that the making of ordinary repairs or alterations by a lessee with the consent of the lessor will subject to liens more than the leasehold estate, for it is the duty of the lessee to keep the premises in repair during his tenancy. In doing this he maintains the property but does not enlarge it, and such repairs are considered as being for his sole benefit. The same may be said of alterations made by the tenant at his own expense, for it is not to be supposed that ordinarily a tenant will materially benefit the reversion in the making of them. From the record before us it appears that the lessee was to use the premises for theater purposes alone. In their condition they were unsuited for such use and when converted into a theater they could be used for nothing else. In effect the lessor burdened the lessee with the obligation to make and pay for the necessary alterations. That it intended to derive a substantial benefit therefrom is evidenced by the fact that instead of requiring, at the end of the tenancy, the restoration of the premises in the condition they were in when leased, the improvements were to pass to the landlord. It was to receive a theater for a hotel. Evidently the metamorphosis accomplished at such great expense was for its benefit as well as that of the termor. That under the facts disclosed plaintiff is entitled to a lien upon the fee is sustained by the authorities.

In O'Leary v. Roe, 45 Mo. App. 567, a conditional sale of certain lots was made upon the expressed agree-

ment of the vendee to make certain improvements thereon. We said: "The only fair and reasonable construction to be placed on this provision of the contract is that the purchaser was authorized and empowered by the vendor to enter into contracts with builders to furnish material and erect the buildings or any part thereof on the lots to which he had the legal title. It was within the expressed contemplation of the parties to the contract that the purchaser should proceed to erect the houses upon the lots of the vendor. By implications from the contract the vendor authorized the purchaser to employ builders, to furnish materials and erect the buildings. The vendor by his contract has subjected the title to the lots to the lien of the plaintiff. The plaintiff is brought within the provisions of the statute." In Lumber Company v. Nelson, 71 Mo. App. 110, in a case very similar to the one before us, the St. Louis Court of Appeals said: "One of the stipulations in the lease from Nelson was that the lessees should expend $20,000 in making improvements upon the leased premises according to plans and specifications which had been agreed to. These improvements were to become the property of the lessor at the termination of the lease. In this state of the evidence it may be truthfully said the improvements on the Nelson lot and the material necessary to make them were made and furnished by his consent and for his benefit. He not only consented to them but contracted with his lessee for them. The improvements were made and the materials furnished under a contract authorized by him and he must be held to have subjected his title in his lot to the plaintiff's lien." We do not agree with respondent that a different rule has been followed by our sister court in the case of Marble Co. v. Handlan, 85 Mo. App. 313. In that case the improvements for which the lien was filed were not contracted for by the owner, but were made by the lessee upon his own initiative. The principle enunciated by the two Courts of Appeals has been recognized by the Supreme

Court in the case of Winslow v. McCully, 169 Mo. 236, and it may be considered as settled that when a lessor contracts with his lessee for the making of improvements of substantial benefit to the estate of the former, materialmen and workmen who furnish material and labor in the construction of the improvement are entitled to liens for their unpaid accounts, which may be enforced against the estates of both lessor and lessee. [Steeves v. Sinclair, 56 App. Div. (N. Y.) 448, affirmed in 171 N. Y. 676; Crandall v. Sorg, 198 Ill. 48; Hall v. Parker, 94 Pa. St. 109; Henderson v. Connelly, 123 Ill. 98; Hill v. Gill, 40 Minn. 441; Barkley v. Wainright, 86 Pa. St. 191; Carey v. Lumber Co., 187 Ill. 203; 2 Current Law, page 873.]

But it is urged by respondents that the judgment must be affirmed because of an entire failure of proof as to the cause of action pleaded. The petition states: "That said defendants Churchill and the Lyric Theater Company at the time of doing said labor and furnishing said material were, and now are, the owners of a ten-year leasehold interest in said premises, said lease having been executed to them by the defendant, the Center Building Comany, then and still the owners of the said building and the aforesaid lots upon which said building was and is situated. That said material was furnished under contract with E. P. Churchill and the Lyric Theater Company, said defendants and lessees who were original contractors for said improvements with defendant, the Center Building Company, and said improvements were erected for the benefit and with the consent of E. P. Churchill and the Center Building Company."

It will be noticed the pleader designated the lien as one founded upon a contract with an original contractor, and it is maintained by respondent that the lessee cannot under any construction of the lease, be held to have sustained that relation to the Center Building Company. In a general sense, every party to a contract is a contractor, but the term as used in statutes relating to me-

chanics' liens has a restricted meaning. It refers to one, who under contract with the owner, undertakes for a consideration to furnish the material, labor and superintendence required in the improvement of the owner's premises, either in the erection of a structure thereon or in the alteration or repair of one in existence. Obviously there is a difference between a lessee, who for the purpose of enhancing the value of his leasehold agrees to make improvements at his cost, and a contractor who is to be paid a specific consideration for which, in case of non-payment, he is entitled to a lien. A contract such as the one before us, that provides for the making of improvements by the lessee which benefit the fee, does not denominate the lessee a contractor within the statutory definition, but makes of him the owner's agent with implied authority to subject the fee title to the liens of materialmen and workmen. But the principle upon which is based the right of a subcontractor to a lien is the implied agency of the original contractor to bind the owner's title. The petition advised the respondents to prepare to meet a lien claim, founded upon a contract between the owner and lessee for the improvement of the owner's premises. In what respect can it be said that respondent was misled by the pleader's mistaken definition of the relationship between the owner and lessee? There could have been no mistake about the contract referred to. An implied agency was alleged. It was immaterial that the pleader thought the lessee was one kind of an agent (a contractor), when in law he was another. The contract spoke for itself and its interpretation and definition is for the courts to determine.

The rule that prevents a recovery upon a different cause of action than that pleaded is based upon the principle that the defendant must be advised, by the petition, of the character of demand asserted against him in order that he may intelligently prepare his defense. He must not be charged with one thing and called upon at the trial to face another. But, on the other hand, if the

proof follows in essential particulars the allegations, the action should not fail because of errors in the pleader's nomenclature. In this case the variance between the allegations and the proof is not substantial and should be disregarded.

In answer to respondents' contention that Churchill, the lessee named in the contract, could not delegate his implied authority to the Lyric Theater Company, it is evident that both parties understood that Churchill was acting on behalf of a corporation, not then in being, but which he proposed to form. Churchill was in fact the Lyric Theater Company, and whatever he did, either in his own name or in the name of the company in carrying out the contract, was the act of the lessee.

It follows that the judgment must be reversed and the cause remanded. All concur.