1999 UT 69

**NOVA CASUALTY COMPANY,**
**Plaintiff and Appellee,**

v.

**ABLE CONSTRUCTION, INC., John C. Flagg, Rita M. Killpack, and Ruth Edmonds, Defendants and Appellants.**

No. 970594.

Supreme Court of Utah.

July 20, 1999.

J. Rand Hirschi, Salt Lake City, for plaintiff.

M. Dayle Jeffs, Provo, for defendants.

ZIMMERMAN, Justice:

¶ 1 This case comes to us as an appeal from a trial court's grant of summary judgment in favor of plaintiff Nova Casualty Company ("Nova") in a declaratory judgment action against defendant Able Construction, Inc. ("Able") and John Flagg, Able's owner. Nova asked the trial court to rule that its insurance contract with Able did not require it to defend Able in a lawsuit filed by Ruth M. Killpack and Rita Edmonds, two purchas-

ers of a residence constructed by Able. The court ruled in Nova's favor, and Able brought this appeal. We affirm.

¶ 2 Able is a construction company owned by Flagg. Nova issued Able an insurance policy on May 1, 1992.[1] The policy provided Able with commercial general liability coverage and required Nova to defend and indemnify Able against certain claims filed against it.

¶ 3 In 1993, Able contracted with Killpack and Edmonds to construct a house on a lot, located in the Apple Ridge Subdivision in Utah County, which Killpack and Edmonds had purchased from a third party. Able had previously owned lots in the Apple Ridge Subdivision, including the lot in question, and in 1988, Flagg, Able's owner, had filed restrictive covenants on these lots. Able completed construction of the home in 1994, after which Killpack and Edmonds occupied it. They also began operating a psychotherapy business, Aspen Therapy, from the home. On October 4, 1994, the architectural committee of the subdivision informed Killpack and Edmonds that the restrictive covenants of the subdivision barred the operation of Aspen Therapy and demanded that they cease. Killpack and Edmonds refused, claiming that Flagg had assured them that the subdivision's restrictive covenants would allow them to operate their psychotherapy business from their home. The architectural committee then filed an action against Killpack and Edmonds, seeking to enjoin the business. Upon stipulation, the court ordered Killpack and Edmonds to cease operating the business from their home.

¶ 4 In June of 1996, Killpack and Edmonds filed a complaint against Able and Flagg in the Fourth Judicial District Court. They alleged breach of contract, fraud, negligent misrepresentation, promissory estoppel, and breach of implied warranty. The complaint alleged that before purchasing the lot, Killpack and Edmonds informed Flagg of their desire to operate a psychotherapy business from their home. Their complaint also alleged that in response, Flagg represented that as developer of the subdivision and drafter of the restrictive covenants, he knew that "there would be no restriction against the operation of the psychotherapy business by [Killpack and Edmonds] from their home."

¶ 5 Able then filed a claim on its insurance policy. It asked Nova to defend and indemnify it for any damages it might have to pay Killpack and Edmonds. Nova accepted the defense of Able pursuant to a reservation of rights in the event Nova determined that the policy did not cover the claims involved. On September 16, 1996, Nova sent Able a letter informing it that the insurance policy did not require Nova to defend or indemnify Able. Nova then filed a declaratory judgment action against Able, Edmonds, and Killpack,[2] seeking a declaration that the insurance policy did not cover the claims. Nova moved for summary judgment. The trial court granted Nova's motion, concluding that the policy's "contract liability exclusion" precluded coverage. Able appealed to this court. On appeal, Nova argues that the trial court was correct in concluding that an exclusion under the policy prevented coverage for claims assumed under a contract. Nova further argues that there are several other grounds for precluding coverage under the policy, all of which were rejected by the trial court. Able contends that a cross-appeal is necessary before we can consider these other arguments.

¶ 6 We set out the standard of review before turning to our analysis. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). Interpretation of the terms of a contract is a question of law. Thus, we accord the trial

---

1. The insurance policy covered Able from May 1, 1992, to May 1, 1994. The insurance policy was originally effective from May 1, 1992, to May 1, 1993. Able renewed the policy for another year, until May 1, 1994.

2. Edmonds and Killpack are named defendants in this action pursuant to section 78–33–11 of the Code, which provides: "When declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration." Utah Code Ann. § 78–33–11 (1996).

court's legal conclusions regarding the contract no deference and review them for correctness. *See AOK Lands, Inc. v. Shand, Morahan & Co.,* 860 P.2d 924, 925 (Utah 1993); *Viking Ins. Co. v. Coleman,* 927 P.2d 661, 663 (Utah Ct.App.1996).

¶ 7 First, we address Able's contention that we cannot consider arguments rejected by the trial court but renewed on appeal by Nova as alternative grounds for the trial court's ruling. Able asserts that if arguments were raised and rejected below, Nova must cross-appeal from the rejection of those arguments before we can consider them. This argument is without merit. Appellees need to cross-appeal only when "they wish to attack a judgment of a trial court for the purpose of enlarging their own rights or lessening the rights of their opponent." *State v. South,* 924 P.2d 354, 355 (Utah 1996). If they wish to uphold the trial court's ruling on grounds that were raised but rejected below, a cross-appeal is not necessary. *See id.* at 356. Here, Nova does not request any change in relief. It was granted summary judgment, and it asks only that the decision of the trial court be affirmed. Therefore, it is free to raise arguments, not accepted below, in support of the ruling.

¶ 8 We next address Nova's duty to defend under the terms of the policy. An insurer's duty to defend is determined by reference to the allegations in the underlying complaint. When those allegations, if proved, could result in liability under the policy, then the insurer has a duty to defend. *See Sharon Steel Corp. v. Aetna Cas. & Sur. Co.,* 931 P.2d 127, 133 (Utah 1997) (citing *Deseret Fed. Sav. & Loan Ass'n v. United States Fidelity & Guar. Co.,* 714 P.2d 1143, 1146 (Utah 1986)). Therefore, we must examine the allegations in the complaint in light of the applicable provisions of the insurance policy to determine if any duty to defend exists.

¶ 9 There are three provisions in the insurance policy that determine coverage. They are titled "Coverage A," "Coverage B," and "Coverage C." Coverage A applies to bodily injury and property damage, Coverage B applies to personal and advertising injury, and Coverage C applies to medical payments.

The trial court only addressed Coverage A, finding it to apply, but then finding the exclusion provision to obviate this coverage. Under the terms of the policy, if any one of the three provisions applies, then the insured is covered under the policy. We, therefore, undertake to consider all these provisions.

¶ 10 We first address Coverage A, which applies to bodily injury and property damage. It provides in relevant part:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit".that may result. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

¶ 11 We first consider Killpack and Edmonds's tort claims under Coverage A. In the complaint, Killpack and Edmonds allege fraud and negligent misrepresentation. We must determine whether the trial court correctly held that these allegations do not amount to claims for bodily injury or property damage. We will first examine the fraud claim and second, the negligent misrepresentation claim, in light of Coverage A. The fraud claim alleges as follows:

Defendants willfully represented that restrictive covenants would not prevent plaintiffs from pursuing a home occupation of psychotherapy and that approval of the home containing the business facilities would be approved as long as plaintiffs complied with Orem City ordinances relating to home businesses.

Defendants knew that such representations were false or made the representations recklessly, knowing that they had

insufficient knowledge upon which to base such representations.

Such fraudulent misrepresentations were made for the purpose of inducing plaintiffs to enter into a contract for the construction of the home upon the premises. Plaintiffs reasonably acted in reliance on the defendants [sic] false representations and in ignorance of their falsity and were induced thereby to construct the home which included the home office facilities.

¶ 12 In determining whether an intentional misrepresentation is an "occurrence" under the general liability insurance policy, we first look to the policy for guidance. According to the definition section of the policy, " '[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Nothing in the insurance policy defines "accident." We therefore turn to our case law.

¶ 13 In *Richards v. Standard Accident Insurance Co.*, 58 Utah 622, 200 P. 1017 (1921), this court said,

> "the word [accident] is descriptive of means which produce effects which are not their natural and probable consequences.... An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds."

*Id.* at 636, 200 P. at 1023 (quoting *Western Commercial Travelers' Ass'n v. Smith*, 85 F. 401, 405 (8th Cir.1898)); *see also Hoffman v. Life Ins. Co.*, 669 P.2d 410, 416 (Utah 1983). We further said that

> [t]he natural consequence of means used [is] the consequence which ordinarily follows from their use—the result which may be reasonably anticipated from their use, and which ought to be expected. The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow.

*Richards,* 58 Utah at 636, 200 P. at 1023 (citation omitted).

¶ 14 Considering the intentional misrepresentation allegations in light of the law, we agree with the trial court that they do not amount to an "occurrence." The trial court reasoned that "[i]t appears that the closing down of the Killpack/Edmonds' home business was the 'natural and probable consequence' of Able's representations and that it was very likely such result would occur if its representations were to be untrue, as they seem to have been." Other jurisdictions also agree that intentional misrepresentations made in connection with the sale of property do not constitute an "occurrence." *See Safeco Ins. Co. v. Andrews*, 915 F.2d 500, 502 (9th Cir.1990) (finding alleged misrepresentations were not "occurrence" as defined under insurance policy); *Dykstra v. Foremost Ins. Co.,* 14 Cal.App.4th 361, 17 Cal.Rptr.2d 543, 545 (1993) (finding intentional or fraudulent acts are deemed purposeful rather than accidental and, therefore, are not covered under a comprehensive general liability policy); *M.L. Foss, Inc. v. Liberty Mut. Ins. Co.*, 885 P.2d 284, 285 (Colo.Ct.App.1994) ("[A]lleged misrepresentations made in connection with the sale of property does not constitute an 'occurrence' as that term is uniformly defined in comprehensive general liability policies"); *First Wyoming Bank, N.A. Jackson Hole v. Continental Ins. Co.*, 860 P.2d 1094, 1100 (Wyo.1993) (holding claims alleging misrepresentation do not fall within the coverage of a comprehensive general liability policy and thus the duty to defend is not triggered).

¶ 15 We next address the negligent misrepresentation allegations under Coverage A. This cause of action reads in relevant part: "In making the representations [that restrictive covenants would not prevent plaintiffs from pursuing a psychotherapy business from their home], defendants owed a duty to the plaintiffs to ascertain and verify the truth of the facts being asserted. The defendants negligently made the misrepresentations set forth above thus breaching the duty of care owed to the plaintiffs." The trial court ruled that negligent misrepresentation *was* an occurrence under the policy. The court relied on *Hoffman,* 669 P.2d at 417

& nn. 2–3, and *Allstate Insurance Co. v. Worthington,* 46 F.3d 1005, 1011 (10th Cir. 1995), for the proposition that the term "accident" in liability insurance contracts includes damages resulting from negligent conduct.

¶ 16 *Hoffman* and *Worthington* are not applicable. Here, the alleged harm may have resulted from a negligently wrong representation, but it was a representation intentionally made with the purpose of inducing the actions taken by the buyers. In *Hoffman* and *Worthington,* the negligent actions of the defendants produced an unintended result—accidental death. Because the consequence of the defendants' actions here was intended, we decline to hold that the action can be defined as an accident. Our views are consistent with the approach of the California courts, which hold that allegations of negligent misrepresentation are not an occurrence or accident under commercial general liability insurance policies because the insured had the intent to induce reliance. " '[N]egligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage.... The underlying rationale of this rule is that negligent misrepresentation requires *intent to induce reliance* and, therefore, is a subspecies or variety of fraud which is excluded from policy coverage." *Dykstra,* 17 Cal.Rptr.2d at 545 (quotations omitted); *see also First Wyoming Bank,* 860 P.2d at 1100 (adopting reasoning set forth in *Dykstra* ).

■ ¶ 17 We now consider the remaining three allegations in the complaint under Coverage A. They are breach of contract, promissory estoppel, and breach of implied warranty. Coverage A covers "bodily injury" or "property damage."[3] We do not find it necessary to conduct an extended analysis of the term "bodily injury." The insurance policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." From the definition provided in the

policy, it is clear that none of the alleged harms amount to allegations of "bodily injury."

■ ¶ 18 Moving to the policy's coverage of "property damage," we note that this term is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The claims for breach of contract, promissory estoppel, and breach of implied warranty seek damages for monetary loss and loss of business. They are phrased as follows:

As a result of the defendants [sic] breach of contract, plaintiffs were required to abandon their home office and obtain, at considerable cost to the plaintiff [sic], separate office space together with increased [sic] in costs, inconvenience, and loss of business in an amount to be proven at trial.

As a direct and proximate result of such fraudulent misrepresentations on the part of the defendants, the plaintiffs have sustained loss of business, monetary loss resulting from expenses incident to obtaining separate business facilities, and other damages incidental to and resulting from the misrepresentations of the defendants in an amount to be proven at trial.

■ ¶ 19 The trial court concluded that the allegation of loss of business use of the property, quoted above, was sufficient to qualify under Coverage A as "loss of use of tangible property that is not physically injured." We are unpersuaded. Killpack and Edmonds did not lose complete use of the house, only the ability to use it for their intended business venture. Therefore, we conclude that Coverage A does not apply to

---

**3.** We recognize that the claims of coverage under the policy's Coverage A as a whole could have been disposed of simply by holding that none of the alleged harms meet the definitions of "bodily injury" or "property damage." However, because the parties raised and briefed extensively the question before us of whether a misrepresentation is an "occurrence," we have chosen to address all three policy terms.

the loss of business use of the house. As for the loss of business, the law is clear that this loss does not fall within the definition of property damage because it is purely economic loss. *See Safeco Ins. Co. v. Andrews,* 915 F.2d 500, 502 (9th Cir.1990). Therefore, these allegations do not give rise to coverage under Coverage A of the insurance policy.

¶ 20 We now turn to Coverage B, which covers advertising injury. It states in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "advertising injury" to which this coverage part applies....
>
> b. This insurance applies to:
>
> . . .
>
> (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services....

"Advertising injury" is defined in the policy in the following terms:

> 1. "Advertising Injury" means injury arising out of one or more of the following offenses:
>
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> b. Oral or written publication of material that violates a person's right of privacy;
>
> c. Misappropriation of advertising ideas or style of doing business; or
>
> d. Infringement of copyright, title or slogan.

¶ 21 In seeking inclusion under Coverage B, Able argues that the plaintiffs "were not able to conduct themselves in a private manner in their home because the alleged misrepresentations led to a court order requiring Killpack and Edmonds to alter their lifestyle within their home. The alleged misrepresentations cause an invasion of the homeowner's privacy." No citations are offered in support of this claim. It stretches the definition of invasion of privacy beyond recognition. We therefore find no advertising injury, and no duty to defend under Coverage B.

¶ 22 Finally, we address Coverage C, which deals with medical expenses. There is no need for any extended analysis since none of the claimed damages even come close to meeting this provision.[4]

¶ 23 We conclude that the allegations in the complaint do not give rise to coverage under any of the three potential coverage provisions. Therefore, Nova has no duty to defend and indemnify Able for its liability to Killpack and Edmonds. Because we dispose of this matter without reaching any exclusionary provisions under the policy, we do not find it necessary to address the correctness of the trial court's holding concerning the "contract liability exclusion." We affirm the grant of summary judgment.

¶ 24 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Judge GREENWOOD concur in Justice ZIMMERMAN's opinion.

¶ 25 Having disqualified himself, Justice RUSSON does not participate herein; Court of Appeals Judge PAMELA T. GREENWOOD sat.

---

4. Coverage C provides: "We will pay medical expenses as described below for 'bodily injury' caused by an accident."