2005 UT App 505

**ADVANCED RESTORATION, L.L.C.,**
**Plaintiff and Appellee,**

v.

**Vasilios C. PRISKOS, Defendant, Third-party Plaintiff, and Appellant,**

v.

**The Center for Behavioral Health, Defendant, Third-party Defendant, and Appellee.**

**No. 20040652–CA.**

Court of Appeals of Utah.

Nov. 25, 2005.

Scott O. Mercer and Ryan B. Hancey, Kesler & Rust, Salt Lake City, for Appellant.

Phillip S. Ferguson and Scot A. Boyd, Christensen & Jensen, PC, Salt Lake City, for Appellee, The Center for Behavioral Health.

James L. Christensen and Christopher G. Jessop, Corbridge Baird & Christensen, Salt Lake City, for Appellee, Advanced Restoration, L.L.C.

Before BENCH, Associate P.J., GREENWOOD and McHUGH, JJ.

## OPINION

GREENWOOD, Judge:

¶1 This case involves a dispute among Vasilios C. Priskos (Landlord), The Center for Behavioral Health (Tenant), and Advanced Restoration, L.L.C. (Advanced), regarding payment for repair work that Advanced performed on leased premises (the Premises). Landlord appeals the trial court's grant of summary judgment against him and in favor of Advanced and Tenant. Specifically, Landlord argues that (1) Tenant was not acting as Landlord's implied agent in contracting with Advanced to repair the damage, and (2) the Lease between Landlord and Tenant (the Lease) requires Tenant to indemnify Landlord against claims resulting from Tenant's use of the Premises and to remove any liens on the Premises within thirty days. Advanced requests an award of attorney fees incurred on appeal. We affirm, but decline to award attorney fees.

## BACKGROUND

¶2 Tenant began leasing the Premises[1] in April 1995 for use as a methadone clinic. The original term of the Lease was for three years, ending June 1, 1998; however, Tenant exercised an option to renew the lease for three additional years. In 2001, the parties continued the Lease on a month-to-month basis. At all relevant times, Tenant was the sole tenant of the Premises, leasing the entire building.

¶3 In late October 2001, a toilet supply tube burst, flooding a large portion of the Premises. The flooding caused extensive damage to both the main floor and the basement, including damage to walls, floors, carpet, and ceiling tile.

¶4 Tenant's director personally initiated repairs of the Premises, completing approximately $1,800 worth of repairs to the floors. Tenant then contracted with Advanced to complete the repairs. Charges for the repair work performed by Advanced totaled $9,300.86.

¶5 Landlord did not become aware of the damage to the Premises until November 2001. However, he did know that Advanced was repairing the Premises before the work was completed. Additionally, Landlord never objected to the hiring of Advanced or to the work performed by Advanced.

¶6 Several weeks later—after Advanced had started work on the Premises—Tenant's insurance company informed Tenant that it would not pay for the damage to the Premises because Tenant's policy covered only personal property and belongings, not damage to the building.

¶7 Tenant then contacted Landlord and explained the situation. Landlord agreed to contact his insurance company, CNA Insurance (CNA), to see if it would cover the damage. CNA agreed to cover the cost of the damage to the Premises, and advised Landlord that there was a $1,000 deductible charge. CNA delivered a check to Landlord for $8,281.52 ($9,281.52 for the covered damage minus $1,000 for the deductible).

¶8 Advanced finished the repair work and requested payment from CNA, only to learn that payment had been sent to Landlord several weeks before. Advanced left a mes-

[1]. Tenant entered into the Lease for the Premises with P.H. Properties, Landlord's predecessor in interest.

sage with Landlord regarding payment, and made several other attempts to collect from Landlord. Landlord, however, refused to transfer the insurance check to Advanced unless Advanced first executed a lien waiver. Advanced refused this request, and filed a mechanics' lien on the Premises on March 7, 2002, apparently only against Landlord's interest in the property.

¶ 9 On March 27, 2002, Tenant attempted to broker an agreement whereby Advanced would release its lien, discount its billing by $1,000 (the amount of Landlord's deductible), and accept the insurance check as payment in full for its repair work on the Premises. In exchange, Landlord would deliver the insurance check to Advanced. However, the deal fell through because Advanced and Landlord were not able to reach an agreement regarding how to accomplish a simultaneous exchange of the insurance check and execution of the lien waiver.

¶ 10 Advanced filed a complaint against Landlord and Tenant for breach of contract, to foreclose on its lien, and other claims not relevant to this appeal. Landlord filed a cross-claim against Advanced for wrongful lien and a third-party complaint against Tenant for breach of contract. Landlord moved for summary judgment, arguing that he was not liable for the cost of repairs under Utah's mechanics' lien statute (the Act), *see* Utah Code Ann. §§ 38–1–1 to –37 (2001 & Supp. 2005), as interpreted in *Interiors Contracting Inc. v. Navalco,* 648 P.2d 1382 (Utah 1982). In response, Advanced filed a motion for summary judgment against Landlord and Tenant, arguing that Landlord was liable to Advanced under *Navalco* and that Tenant was contractually bound to pay for the repairs in any case.

¶ 11 The trial court denied Landlord's motion for summary judgment against Advanced and granted summary judgment in favor of Advanced against Landlord, reasoning that (1) Tenant was acting as Landlord's implied agent when it contracted with Advanced for the repair work, and (2) Landlord's "failure to tender the insurance check to Advanced or pay the check into court is in direct contravention of the policies surrounding the ... Act." Accordingly, the trial court ruled that Landlord was liable for the entire amount, plus reasonable attorney fees and costs.

¶ 12 Considering Advanced's motion for summary judgment against Tenant, the trial court ruled that "under the Work Authorization signed by Tenant, Tenant was obligated to pay Advanced for the work it did on the building." However, because Tenant was acting as Landlord's "implied agent when it executed the Work Authorization," Tenant's liability to Advanced "is contingent upon [Landlord's] delivery of the insurance check to Advanced."

¶ 13 Additionally, Landlord filed a third-party complaint against Tenant alleging that (1) paragraph 11 of the Lease makes Tenant responsible for the damage to the Premises; (2) Tenant breached paragraph 19 of the Lease by failing to procure proper insurance and by failing to indemnify Landlord; (3) Tenant breached paragraph 30 of the Lease by allowing Advanced's lien to remain on the Premises for more than thirty days.

¶ 14 Landlord and Tenant filed cross-motions for summary judgment. The trial court granted summary judgment in favor of Tenant and against Landlord, concluding that (1) paragraph 11 of the Lease makes Landlord responsible for plumbing defects; (2) Tenant complied with paragraph 19 of the Lease by carrying liability insurance; (3) paragraph 19 of the Lease does not require Tenant to indemnify Landlord against his own negligence, and Landlord's "own failure to reach an agreement [with Advanced] absolved [Tenant] of liability pursuant to paragraph nineteen"; and (4) Tenant complied with paragraph 30 of the Lease by facilitating communications between the parties in an attempt to have Advanced's lien removed in less than thirty days, which Landlord thwarted by refusing to reach an accord and tender the insurance check. Additionally, the trial court awarded Tenant attorney fees and costs.

¶ 15 Landlord appeals the trial court's rulings as to both Advanced and Tenant.

## ISSUES AND STANDARD OF REVIEW

¶ 16 Against Advanced, Landlord argues that the trial court misinterpreted *Interiors*

*Contracting Inc. v. Navalco*, 648 P.2d 1382 (Utah 1982), to conclude that Tenant acted as Landlord's implied agent in contracting with Advanced for repair work on the Premises.

¶ 17 Against Tenant, Landlord argues that the trial court misinterpreted the Lease, specifically paragraphs 19 (regarding Tenant's duty to indemnify Landlord) and 30 (regarding Tenant's duty to remove liens on the Premises).

¶ 18 "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69,¶ 6, 983 P.2d 575. "When reviewing a grant of summary judgment, we view all facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and review the trial court's conclusions of law for correctness." *Khalsa v. Ward*, 2004 UT App 393,¶ 5, 101 P.3d 843. Additionally, "[i]nterpretation of the terms of a contract is a question of law. Thus, we accord the trial court's conclusions regarding the contract no deference and review them for correctness." [2] *Nova Cas. Co.*, 1999 UT 69 at ¶ 6, 983 P.2d 575.

## ANALYSIS

### I. Landlord's Arguments Against Advanced

#### A. Review of *Interiors Contracting Inc. v. Navalco*

¶ 19 Landlord first argues that summary judgment in favor of Advanced was improper because the trial court erred in concluding that Tenant acted as Landlord's implied agent in contracting with Advanced for repairs to the Premises. All parties agree that the Utah Supreme Court's interpretation of the Act [3] in *Interiors Contracting Inc. v. Navalco*, 648 P.2d 1382 (Utah 1982), is the controlling authority on this issue.

¶ 20 In *Navalco*, the owner of the premises, Navalco, leased certain real property to Green Acres under a ten-year lease, which, several years later, subleased a portion of the property to Hungry Hawaiian, with Navalco's approval, for use as a restaurant. *See id.* at 1384. Thereafter, Hungry Hawaiian began to convert the premises into a restaurant by entering into a contract with Interiors Contracting for the finishing of interior walls and ceilings, and Action Fire Sprinklers for the installation of a fire sprinkling system. *See id.* at 1385. Hungry Hawaiian never paid Interiors Contracting or Action Fire Sprinklers (collectively, the plaintiffs) for their services, and each party filed a notice of lien on the building and complaints against several defendants, including—relevant to the current appeal—Green Acres, the lessee and sublessor. *See id.*

¶ 21 The trial court granted Green Acres's motion for summary judgment, concluding that, because Green Acres did not contract with the plaintiffs for the alterations, Hungry Hawaiian was not acting as Green Acres's agent in contracting with the plaintiffs, and there was no reliance by the plaintiffs on Green Acres. *See id.*

2. Landlord claims that there are three issues for review, but does not separately brief all three issues. The omitted issue is: "In light of the relevant lease language and lack of evidence concerning the nature and timing of the plumbing problem at issue, did the lower court err in awarding summary judgment in favor of [Tenant] and against [Landlord]?" It is well established that we will not consider an issue that is inadequately briefed. *See State v. Yates*, 834 P.2d 599, 602 (Utah Ct.App.1992). Therefore, we will not consider this argument against Tenant.

3. The Act provides, in pertinent part:

Contractors, subcontractors, and all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner ... shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment for the value of the service rendered, labor performed, or materials or equipment furnished or rented by each respectively, *whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise except as the lien is barred ....* This lien shall attach only to such interest as the owner may have in the property. Utah Code Ann. § 38–1–3 (2001) (emphasis added). The relevant provisions of the Act were substantially similar when the Utah Supreme Court interpreted it in *Interiors Contracting Inc. v. Navalco*, 648 P.2d 1382 (Utah 1982).

¶ 22 On appeal, the supreme court first acknowledged that "[t]he purpose of the [Act] is to provide protection to those who enhance the value of a property by supplying labor and materials." *Id.* at 1386. "Under [the Act] a lessee may be 'an owner' within the meaning of the statute and his leasehold may be subject to a mechanic[s'] lien." *Id.* "The precise issue, therefore, is whether the improvements made for Hungry Hawaiian were made 'at the instance of the owner,' Green Acres, 'or any other person acting by [its] authority as agent, contractor or otherwise.'" *Id.* (alteration in original) (quoting Utah Code Ann. § 38–1–3 (1953)).

▪ ¶ 23 However, "the mere existence of a lessor-lessee relationship, without more, does not justify charging the lessor's interest with a mechanic[s'] lien for improvements made on the property at the instance of the lessee." *Id.* "The statutory language 'at the instance of . . . .' requires either an express or implied contract between the lessor or his agent and the contractor." *Id.* (alteration in original). "A lessee does not become the agent of the lessor simply on the basis that the lessor has knowledge that improvements are being made, or even that the lessor cooperated with the lessee with respect to the improvements . . . ." *Id.*

▪ ¶ 24 "[A] lessor is subject to a lien for improvements by a tenant if the lease 'requires or obligates the tenant to construct improvements which substantially enhance the value of the freehold . . . .'" *Id.* at 1387 (alteration in original) (emphasis omitted) (quoting *Utley v. Wear,* 333 S.W.2d 787, 792 (Mo.Ct.App.1960)). Whether a lease creates an agency between the lessor and the lessee under the Act is determined by the facts of the transaction:

> "If, on account of the shortness of the lease, the extent, cost, and character of the improvements, or other facts in evidence, such as the participation by the lessor in the erection or construction thereof, it can be seen that the improvement is really for the benefit of the lessor, and that he is having the work done through his lessee, then it can be said with justice that the lessee in such case is acting for the lessor.

> In determining whether an agency should be implied the courts have often, perhaps of necessity, gone beyond the agreement and into the whole circumstances of the letting in order to find the answer. . . . Where the premises are let for a specific purpose and where the nature of the premises is such that the purpose cannot be accomplished except by the making of substantial improvements to the freehold, then the tenant is, by implication, required to make such improvements. He has no other option, and hence he is the landlord's (implied) agent to the extent of subjecting the property to a lien, this upon the theory that the landlord contemplated the necessity and required that such necessity be met."

*Id.* (alteration in original) (emphasis omitted) (quoting *Utley,* 333 S.W.2d at 792–93) (quotations and citations omitted).

¶ 25 Applying these principles, the supreme court concluded that even though there was no express contract between the plaintiffs and Green Acres, "the facts do not . . . exclude, as a matter of law, the possibility that Green Acres may have made Hungry Hawaiian its agent, at least to some extent, within the contemplation of the [Act]." *Id.* The lease between Green Acres and Hungry Hawaiian contemplated that the latter would operate a restaurant during the term of the lease. *See id.* Because the leased premises had not been used as a restaurant before, substantial improvements were necessary, even though the only improvement required by the lease was the fire sprinkling system. *See id.* And the fire sprinkler system "clearly benefitted both the lessor and lessee." *Id.* Furthermore, even though the sublease was for over twelve years, "there is nothing in the record to indicate that all the improvements made were usable only by Hungry Hawaiian." *Id.* Accordingly, summary judgment was reversed because "the sublease does not foreclose the possibility . . . that Hungry Hawaiian was an agent of Green Acres under the [Act] to the extent that certain improvements were made to the premises which clearly and actually conferred a value on Green Acres when Hungry Hawaiian terminated its tenancy." *Id.* at 1390.

B. Application of *Interiors Contracting Inc. v. Navalco*

¶ 26 Applying these principles to the case at hand, we conclude that Tenant acted as Landlord's implied agent in contracting with Advanced for repairs to the Premises. It is undisputed that Advanced's contract for repairs was with Tenant rather than Landlord. However, in determining whether agency should be implied "the facts of the transaction must be explored."[4] *Interiors Contracting Inc. v. Navalco,* 648 P.2d 1382, 1387 (Utah 1982). Here, the facts indicate that the repairs were "really for the benefit of [Landlord], and that he [was] having the work done through [Tenant]." *Id.* (quotations and citations omitted).[5]

¶ 27 First and of foremost importance in this case is the short duration of the Lease term. *See id.* (noting "the shortness of the lease" as a factor in implying agency (quotations and citations omitted)). Although Tenant originally entered into the Lease for a term of three years, and renewed this term once, at the time the damage to the complex occurred, Tenant was leasing the Premises on a month-to-month basis. Under the terms of the Lease, if Tenant holds over after its expiration as a month-to-month tenant, "all provisions of [the] Lease . . . shall remain in full force and effect during the month-to-month tenancy" and either party may terminate the tenancy with thirty days'

written notice. Given this short lease term, regardless of which party the Lease obligated to make the repairs, it is unlikely that Tenant contracted for the repairs on its own behalf. While Tenant may have enjoyed the present use of the repairs while its tenancy continued, because Landlord could end the tenancy with a mere thirty days' notice, the primary beneficiary of the repairs was Landlord, whose reversionary interest was greatly enhanced by the repairs. *See id.* (considering that the improvements "clearly benefitted both lessor and lessee" as important in implying agency); *see also Newport v. Hedges,* 358 S.W.2d 441, 445 (Mo.Ct.App.1962) ("The fact that the improvements are to 'revert' to the owner at the end of the term, although not, alone and in and of itself, sufficient to create the implication in law of the agency, is a factor to be considered in determining the intention of the parties."). Thus, the shortness of the Lease indicates that Tenant contracted with Advanced on Landlord's behalf.

¶ 28 Additionally, Landlord behaved as if Tenant was his agent in contracting with Advanced. It is undisputed that Landlord knew of the repair work while it was being completed and did not object to either Tenant's hiring of Advanced or to the work performed by Advanced. Although "a lessee does not become the agent of the lessor simply on the basis that the lessor has knowl-

---

4. Although such a fact-sensitive inquiry may generally make summary judgment inappropriate on this issue, *see* Utah R. Civ. P. 56(c) (requiring "no genuine issue as to any material fact" for summary judgment), in the instant case the relevant facts are not in dispute. Indeed, in the proceedings below, Landlord also sought summary judgment in its favor, citing the same undisputed facts. Therefore, because the parties have identified no genuine issues of material fact, we review only whether the moving parties "are entitled to a judgment as a matter of law." *Id.*

5. Landlord's argument for reversal centers around a single provision of the Lease, paragraph 11, providing in part:

Landlord agrees, for the term of this Lease, to maintain the roof, in good condition and repair any latent defects in the exterior walls, floor joints, and foundations, and to repair any defects in the plumbing, electrical, heating and air conditioning systems *at date of occupancy,* as well as any damage that might result from acts of Landlord or Landlord's representatives.

(Emphasis added.) Landlord claims that the phrase "at date of occupancy" obligated him to repair only plumbing defects existing at the date Tenant took occupancy, and that, thereafter, Tenant was solely responsible for plumbing defects. Thus, Landlord contends that if Tenant was obligated to repair the Premises it acted on its own behalf, rather than Landlord's, in contracting with Advanced.

We conclude that it is unclear, from this provision and other Lease terms, which party was obligated to repair the damage to the Premises. However, "[i]n determining whether an agency should be implied the courts have often, perhaps of necessity, gone beyond the agreement and into the whole circumstances of letting in order to find the answer." *Interiors Contracting Inc. v. Navalco,* 648 P.2d 1382, 1387 (Utah 1982) (quotations and citations omitted). We do so here and, as explained in the body of this opinion, conclude that the facts and the parties' behavior indicate that Tenant acted as Landlord's implied agent in contracting with Advanced.

edge that improvements are being made," *Navalco,* 648 P.2d at 1386, in this case, Landlord went beyond simple acquiescence and cooperation by submitting a claim to his insurance company and receiving a check covering the damage. Indeed, by these actions Landlord ratified the contract between Tenant and Advanced.

¶ 29 " 'A principal may impliedly or expressly ratify an agreement made by an unauthorized agent. Ratification of an agent's acts relates back to the time the unauthorized act occurred and is sufficient to create the relationship of principal and agent.' " *Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090, 1098 (Utah 1988) (quoting *Bradshaw v. McBride,* 649 P.2d 74, 78 (Utah 1982)). Moreover, "[r]atification like original authority need not be express. Any conduct which indicates assent by the purported principal to become a party to the transaction or which is justifiable only if there is ratification is sufficient. Even silence with full knowledge of the facts may ... operate as a ratification." *Bradshaw,* 649 P.2d at 78 (quotations and citation omitted). Landlord, by submitting a claim to his insurance company and receiving payment for the damage, "indicate[d] assent ... to become a party to the transaction," *id.* (quotations and citation omitted), thereby ratifying the contract between Tenant and Advanced, which " 'is sufficient to create the relationship of principal and agent.' " *Clark Clinic,* 762 P.2d at 1098 (quoting *Bradshaw,* 649 P.2d at 78).[6]

¶ 30 Finally, we consider the character of the work and the benefit that it bestowed upon Landlord to be important in implying an agency relationship in this case. *See Interiors Contracting Inc. v. Navalco,* 648 P.2d 1382, 1387 (Utah 1982) (considering the "extent, cost, and character" of the alterations to be important facts in implying an agency relationship (quotations and citations omitted)). Landlord has admitted that Advanced's work was necessary to repair "extensive damage to both the main floor and the basement level of the Premises, including damage to various walls, floors, carpet, and ceiling tile." Due to the extensive nature of these repairs, and contrary to Landlord's assertions, it is not determinative that these repairs merely restored the Premises to their preflood state, or that the alterations were repairs rather than improvements. Although there are no Utah cases addressing this issue, the Missouri Court of Appeals [7] opined that it is not important

that the whole project[,] ... as the events later worked out, did not really enhance the value of the property. It is a question of the intention of the parties, to be gathered if possible from their contract at the time of its execution. And the *value* which the owner expects to realize does not necessarily involve any actual increase in market value. It may lie in increased rental

---

6. Landlord argues that we cannot consider the possibility that Landlord ratified the contract between Advanced and Tenant because this argument was not presented to the lower court. We disagree.

Generally, "[w]e will not address any new arguments raised for the first time on appeal." *Coombs v. Juice Works Dev., Inc.,* 2003 UT App 388,¶ 6 n. 3, 81 P.3d 769 (quotations and citations omitted). However, it is well established that we may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, *was not raised in the lower court, and was not considered or passed on by the lower court.*

*Bailey v. Bayles,* 2002 UT 58,¶ 10, 52 P.3d 1158 (emphasis added) (quotations and citations omit-

ted). As discussed in the body of this opinion, the grounds supporting our conclusion that Landlord ratified the contract between Tenant and Advanced are apparent on the record. Moreover, we do not hinge affirmance on these grounds alone. Rather, we consider Landlord's ratification of the contract between Tenant and Advanced to be but one factor that supports our conclusion that an implied agency relationship existed between Landlord and Tenant in contracting with Advanced to repair the Premises.

7. We consider the reasoning of the Missouri courts, from which our implied agency jurisprudence stems, to be particularly persuasive on this issue. *See Zions First Nat'l Bank v. Carlson,* 23 Utah 2d 395, 464 P.2d 387, 390 (1970) (following the reasoning in *Utley v. Wear,* 333 S.W.2d 787 (Mo.Ct.App.1960), on the implied agency issue); *Interiors Contracting Inc. v. Navalco,* 648 P.2d 1382, 1387 (Utah 1982) (same).

value and adaptability to use; in present benefit of the freehold interest; permanent and substantial improvements which are beneficial to the owner; "substantial betterment"; or in benefit to the reversionary interest.

*Newport v. Hedges,* 358 S.W.2d 441, 445 (Mo. Ct.App.1962) (internal citations omitted); *see also Gem State Lumber Co. v. Union Grain & Elevator Co.,* 47 Idaho 747, 278 P. 775, 776 (1929) (implying agency between the tenant and landlord under Idaho's mechanics' lien act when lease required tenant to "effect certain alterations and make repairs"). Here, Landlord stood to receive, at only thirty days' notice to Tenant, a completely repaired building instead of a severely damaged one. Given the short lease term, such extensive repairs "substantially enhance[d] the value of the freehold," *Navalco,* 648 P.2d at 1387 (quotations and citations omitted), indicating that Tenant contracted with Advanced as Landlord's agent.[8] *See The Dougherty–Moss Lumber Co. v. Churchill,* 114 Mo.App. 578, 90 S.W. 405, 406–07 (1905) ("In effect the lessor burdened the lessee with the obligation to make and pay for the necessary alterations. That it intended to derive a substantial benefit therefrom is evidenced by the fact that instead of requiring, at the end of the tenancy, the restoration of the premises in the condition they were in when leased, the improvements were to pass to the landlord. It was to receive a theater for a hotel. Evidently the metamorphosis accomplished at such great expense was for its benefit as well as that of the termor. That under the facts disclosed plaintiff is entitled to a lien upon the fee is sustained by the authorities."); *cf. Navalco,* 648 P.2d at 1387 (considering as important in determining whether Hungry Hawaiian was "an agent of Green Acres under the [Act]," that "certain improvements were made to the premises which clearly and actually conferred *a value* on Green Acres when Hungry Hawaiian terminated its tenancy." (emphasis added)).[9]

¶ 31 Accordingly, we conclude that the short duration of the Lease term, Landlord's ratification of the contract between Tenant and Advanced, and the extensive nature of the repairs indicate that Tenant acted as Landlord's implied agent in contracting with Advanced to repair the Premises, subjecting Landlord's interest in the Premises to a mechanics' lien.

## II. Landlord's Arguments Against Tenant

¶ 32 Landlord next argues that the trial court erroneously granted summary judgment against Landlord and in favor of Tenant regarding Tenant's compliance with paragraphs 30 and 19 of the Lease. We affirm.

¶ 33 "Interpretation of the terms of a contract is a question of law. Thus, we accord the trial court's conclusions regarding the contract no deference and review them for correctness." *Nova Cas. Co. v. Able Constr., Inc.,* 1999 UT 69, ¶ 6, 983 P.2d 575.

¶ 34 Paragraph 30 provides, in pertinent part, that "Tenant agrees not to permit any lien for monies owing by Tenant to remain against the leased premises for a period of more than thirty (30) days following discovery of the same by Tenant." As the trial court ruled, Tenant complied with this provision by brokering an agreement, within thirty days, to have the lien removed, but Landlord failed to follow through on the settlement. *Cf. Zion's Prop., Inc. v. Holt,* 538 P.2d 1319, 1321 (Utah 1975) ("[T]here is implied in any contract a covenant of good faith and cooperation, which should prevent either party from impeding the other's performance of his obligations thereunder; and that one party may not render it difficult or impossi-

---

8. We are not to be understood as holding that all repairs made by a lessee will subject the lessor's estate to mechanics' liens under an implied agency theory. Rather, this determination is fact-based, *see Interiors Contracting Inc. v. Navalco,* 648 P.2d 1382, 1387 (Utah 1982), and so will vary from case to case.

9. We also agree with the trial court's conclusion that Landlord's actions in pocketing the money from his insurance company rather than using it to pay Advanced for the repair work to the Premises is directly contradictory to the purpose of the Act. *See Stanton Transp. Co. v. Davis,* 9 Utah 2d 184, 341 P.2d 207, 209 (1959) (noting "[t]he purpose of the lien statutes is to protect those who have added directly to the value of property by performing labor or furnishing materials upon it.").

ble for the other to continue performance and then take advantage of the non-performance he has caused." (footnotes omitted)). Thus, Tenant complied with paragraph 30.

¶ 35 In paragraph 19, Tenant agreed to indemnify and hold harmless Landlord of and from any and all claims of any kind or nature arising from Tenant's use of the demised Premises during the term hereof, and Tenant hereby waives all claims against Landlord ... except such as might result from the negligence of Landlord or Landlord's representatives or from *performance by Landlord.*

(Emphasis added.) Tenant complied with this provision by attempting, in good faith, to broker a settlement agreement between Landlord and Advanced. Landlord's failure to reach a settlement with Advanced was his own failure of performance, for which Tenant has no obligation to indemnify. Therefore, we affirm the grant of summary judgment in favor of Tenant and against Landlord.

### III. Attorney Fees on Appeal

¶ 36 Advanced argues that it is entitled to attorney fees and costs "incurred in defending [Landlord's] meritless appeal." Rule 24(a)(9) of the Utah Rules of Appellate Procedure states that "[a] party seeking to recover attorney's fees incurred on appeal shall state the request explicitly and set forth

the legal basis for such an award." [10] Utah R.App. P. 24(a)(9). Although Advanced stated in its brief that Landlord's appeal was "meritless," it did not cite the legal basis for the awarding of attorney fees for a frivolous appeal—Rule 33 of the Utah Rules of Appellate Procedure.[11] *See* Utah R.App. P. 33. The Act states that "in any action brought to enforce any lien ... the successful party shall be entitled to recover a reasonable attorneys' fee." Utah Code Ann. § 38–1–18. "[A]n appeal from a suit brought to enforce a lien qualifies as part of 'an action' for the purposes of this section." *Richards v. Security Pac. Nat'l Bank,* 849 P.2d 606, 612 (Utah Ct.App.1993). However, Advanced has not cited the Act in its request for attorney fees on appeal, and thus has completely failed to comply with rule 24's requirement to state its "request explicitly and set forth the legal basis for such an award." Utah R.App. P. 24(a)(9). Therefore, we decline to award Advanced reasonable attorney fees incurred on appeal.[12]

### CONCLUSION

¶ 37 In conclusion, we affirm summary judgment in favor of Advanced and Tenant and against Landlord. Tenant acted as Landlord's implied agent in contracting with Advanced for repairs to the Premises. In addition, Tenant complied with paragraphs 30 and 19 of the Lease.[13] Finally, we

---

10. This sentence was added to rule 24(a)(9) of the Utah Rules of Appellate Procedure on November 1, 2004, *see* Utah R.App. P. 24(a)(9) (amended November 1, 2004), prior to briefing in this case.

11. We do not address whether Landlord's appeal is frivolous.

12. Tenant has not requested attorney fees on appeal and is not entitled to fees under the Act.

13. Although we rule in favor of Advanced in this appeal, we are dismayed by the unprofessional and inappropriate language used by Advanced in its brief, where it states that both Landlord and Tenant "ought to be ashamed of themselves," and repeatedly refers to opposing counsel's arguments as "revolting," "disingenuous," "nonsensical," "insulting to the intelligence of the Court," "ridiculous," and "reprehensible."

"Derogatory references to others or inappropriate language of any kind has no place in an

appellate brief and is of no assistance to this court in attempting to resolve any legitimate issues presented on appeal." *State v. Cook,* 714 P.2d 296, 297 (Utah 1986) (per curiam). We also remind counsel that, as lawyers, they are bound by the Rules of Professional Conduct, which require lawyers to maintain the decorum of the tribunal, and that "[r]efraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants." Utah R. Professional Conduct 3.5 cmt. Additionally, the Standards of Professionalism and Civility, promulgated by the Utah Supreme Court, urge lawyers to "avoid hostile, demeaning, or humiliating words in written and oral communications with adversaries." Utah Standards of Professionalism and Civility 3. Finally, we advise counsel that appellate briefs must be free from "burdensome, irrelevant, immaterial, or scandalous matters. Briefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court, and the court may assess attorney fees against the offending lawyer." Utah R.App. P. 24(j).

decline to award Advanced attorney fees incurred on appeal because Advanced has not properly briefed its request, as required by rule 24(a)(9) of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 24(a)(9).

¶ 38 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and CAROLYN B. McHUGH, Judge.