2009 UT App 168
In the interest of T.R.E., a person under eighteen years of age.
B.E. nka B.B., Petitioner and Appellee,
v.
R.E., Respondent and Appellant.
Case No. 20080725-CA.
Court of Appeals of Utah.
Filed June 25, 2009.
Kenneth L. Combs, St. George, for Appellant.
Brent M. Brindley, St. George, for Appellee Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges Thorne, Bench, and McHugh.
This memorandum decision is subject to revision before publication in the Pacific Reporter.

MEMORANDUM DECISION
BENCH, Judge:
¶ 1 R.E. (Father) appeals the termination of his parental rights in T.R.E. (Child), claiming that the juvenile court abused its discretion by finding (1) that Father had not rebutted the prima facie evidence of abandonment and (2) that termination was in Child's best interests. When reviewing the decision to terminate parental rights, "we give the juvenile court a wide latitude of discretion as to the judgments arrived at based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges' special training, experience[,] and interest in this field." In re A.B., 2007 UT App 286, ¶ 10, 168 P.3d 820 (alteration in original) (internal quotation marks omitted). Thus, "[w]e will not disturb the juvenile court's findings and conclusions unless the evidence clearly preponderates against the findings as made or the court has abused its discretion." In re R.A.J., 1999 UT App 329, ¶ 6, 991 P.2d 1118 (alteration in original) (internal quotation marks omitted).
¶ 2 "The court may terminate all parental rights with respect to a parent if the court finds . . . that the parent has abandoned the child . . . ." Utah Code Ann. § 78A-6-507(1)(a) (2008). "[I]t is prima facie evidence of abandonment that the parent. . . ha[s] failed to communicate with the child by mail, telephone, or otherwise for six months . . . ." Id. § 78A-6-508(1)(b). "[O]nce a prima facie case of abandonment is shown, the burden shifts to the parent to rebut abandonment." In re M.S., 815 P.2d 1325, 1329 (Utah Ct. App. 1991). If the parent fails to rebut the prima facie evidence of abandonment, "the court shall then consider the welfare and best interest of the child . . . [to] determin[e] whether termination of parental rights shall be ordered." Utah Code Ann. § 78A-6-503(2) (2008).
¶ 3 After hearing the evidence, the juvenile court found two prima facie cases of abandonment based on two periods of time during which Father failed to communicate with Child for more than six months: (1) February 2004 to January 2006[1] and (2) April 2007 to December 2007. The juvenile court also found that "there [was] no reasonable justification in any of the evidence presented to the [c]ourt for [Father] having no contact with [Child] from April 2007 to December 2007." With respect to Father's claims that Mother had interfered with his attempts to communicate with Child, the juvenile court found that Father had shown that "Mother desired that Father not be a part of [Child]'s life, but Father did not prove that Mother took action to bring her desires to pass." The court acknowledged that Father's mother (Grandmother) had attempted to telephone Mother to arrange for Father to visit Child. The court concluded, however, that these attempts were insufficient to rebut the abandonment presumption for two reasons: (1) the efforts were made by Grandmother instead of Father and (2) even if Father requested that Grandmother make the calls, that request would constitute only a "token effort[]." In other words, Father "did virtually nothing himself" to arrange visitation with Child.
¶ 4 The evidence does not clearly preponderate against the juvenile court's findings and conclusion that Father did not rebut the presumption of abandonment. In only one instance did Mother wrongly refuse Father's demand for visitation, which occurred in December 2007nine months after Father had stopped communicating with Child. On his part, Father initially visited Child consistently after Father and Mother separated in 2001. However, after the divorce in 2003 and again starting in February 2006, Father began missing visits, visiting only sporadically, and eventually not visiting Child at all. Although Mother was genuinely interested in having Father be a part of Child's life after the parties divorced, she became content with letting Father remove himself from Child's life. In October 2007, seven months after Father ceased communication, Mother demonstrated her desire that Father no longer be a part of Child's life by reacting angrily to school officials who had permitted Grandmother to visit Child when Grandmother had not first asked permission or notified Mother of the visit. Mother testified as to legitimate reasons for changing Child's school enrollment and for moving to a new home in early 2008, which move was after the relevant period of abandonment.[2]
¶ 5 The juvenile court also found that Child's best interests were served by terminating Father's parental rights because negative influence and repeated inconsistent influence were detrimental to Child and because "[t]o do anything other than terminate would do nothing but prolong turmoil in [Child]'s life." The evidence at trial showed that Father's inconsistency had a negative effect on Child, especially given Child's ADHD and Asperger's disorder. The evidence also showed that some of the inconsistency and the majority of the lack of communication came about because of Father's animosity toward Mother. Father testified under oath that he refused to talk to Mother because of their past, and he affirmed his continuing refusal to do so by also stating under oath, "There is nothing that anyone can do to change my mind."[3] In light of this evidence, the juvenile court did not abuse its discretion in finding that Father's "sustained animosity jeopardized the welfare and best interest of [Child]" and that attempting to order Father to cooperate and put his feelings aside would be futile.[4]
¶ 6 We disagree with the dissent's interpretation and application of the statute permitting termination of parental rights based on abandonment. See infra ¶¶ 15-16 (discussing Utah Code section 78A-6-508(1)). While we interpret a statute by looking at its plain language, "we [also] try to read the plain language of a statute as a whole, with due consideration of the other provisions and in an effort to interpret them in harmony with each other and with other statutes under the same and related chapters." Dale T. Smith & Sons v. Utah Labor Comm'n, 2009 UT 19, ¶ 7, 627 Utah Adv. Rep. 3 (emphasis added) (internal quotation marks omitted). Although there is no "token efforts" exception to the six-month rule enunciated in Utah Code section 78A-6-508(1)(b), the code section allowing termination of parental rights for abandonment explicitly states that "[t]he court may terminate all parental rights with respect to a parent if the court finds . . . that only token efforts have been made by the parent . . . to . . . communicate with the child." Utah Code Ann. § 78A-6-507(1)(f)(i) (emphasis added). The dissent's stilted construction of Utah Code section 78A-6-508(1)(b) would permit even the most minimal and superficial attempts to contact a child to qualify as "communication" sufficient to prevent a finding of abandonment.
¶ 7 Furthermore, even assuming the correctness of the dissent's construction of Utah Code section 78A-6-508(1)(b), this case can easily be affirmed on the alternative ground that Father made only token efforts to communicate with Child. See Advanced Restoration, LLC v. Priskos, 2005 UT App 505, ¶ 29 n.6, 126 P.3d 786 ("[I]t is well established that we may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court." (internal quotation marks omitted)). This court has upheld a finding of token efforts where a father maintained an "infrequent visitation schedule[] . . . [and] placed but one phone call or mailed one card to [his child] every four to six months." In re adoption of B.O., 927 P.2d 202, 203 (Utah Ct. App. 1996). Father's actions in this case clearly fall within this definition of "token efforts," and the record certainly supports termination of Father's parental rights on this alternative ground.[5]
¶ 8 We conclude that the evidence presented does not clearly preponderate against the juvenile court's finding that Father had abandoned Child and that Father failed to rebut the presumption of abandonment. The entirety of Father's evidence that Mother interfered with his attempts to communicate with Child was that Mother did not answer or return a handful of phone calls made by Grandmother over a several-month period. Mother's less-than-perfect behavior in this regard does not negate the fact that Father failed to communicate with Child on his ownsuch as by telephoning Child himself or attempting to visit Child in person nor does it negate Father's unwillingness to "change his approach to parenting" in order to find more effective avenues for such communication. Given that there was no evidence that Father would adjust his behavior to become a more consistent parent to Child, the juvenile court did not abuse its discretion in determining that it was in Child's best interests to terminate Father's parental rights.
¶ 9 Accordingly, we affirm.
¶ 10 Justices Carolyn B. McHugh, Judge; Concur.
THORNE, Associate Presiding Judge (dissenting):
¶ 11 I write separately from my colleagues for two reasons. First, I respectfully dissent from the conclusion reached in the majority opinion. Second, while not directly relevant to the holding in this case, I am concerned by the Guardian ad Litem Office's dramatic and unexplained reversal of litigation position between trial and appeal.
¶ 12 This case presents the situation of a custodial parent i.e., the parent who ultimately controls access to the child seeking to terminate the noncustodial parent's rights based on an assertion of abandonment, notwithstanding the objection of the non-custodial parent that any appearance of abandonment was manufactured by the custodial parent's interference with court ordered visitation/parent-time. Although such an action is permissible under the law, the potential for abuse and manipulation of visitation so as to establish abandonment in such situations should be self-evident. Against the backdrop of this potential for abuse, and upon reviewing the evidence and findings in this case, I do not believe that Mother has adequately established Father's abandonment of Child. Accordingly, I would reverse the juvenile court's termination order.
¶ 13 In the context of terminating parental rights, abandonment is defined as "'conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship.'" J.C.O. v. Anderson, 734 P.2d 458, 462 (Utah 1987) (quoting In re J. Children, 664 P.2d 1158, 1159 (Utah 1983)). Utah Code section 78A-6-508(1) identifies various circumstances that constitute prima facie evidence of abandonment. See Utah Code Ann. § 78A-6-508(1) (2008). In the case resolved today, the juvenile court relied solely on section 78A-6-508(1)(b), which identifies as prima facie evidence of abandonment a parent's "fail[ure] to communicate with the child by mail, telephone, or otherwise for six months." Id. § 78A-6-508(1)(b) (emphasis added).
¶ 14 The juvenile court based its conclusion of abandonment on the eight-month period from April to December 2007, during which time Father had no direct contact with Child. However, the juvenile court did make a factual finding that Father did attempt to communicate with Child over this time period by asking his own mother, Grandmother, to telephone Mother and arrange visitation. The juvenile court found that Grandmother "did indeed make attempts to contact Mother" and that "Mother intentionally ignored the attempts."
¶ 15 The juvenile court, however, deemed these attempts insufficient to "rebut the abandonment presumption" because "the efforts were made by [Grandmother] instead of [Father]" and because "Father's only action was to ask [Grandmother] to make a few (unanswered) phone calls within an eight month period, which is only token efforts anyway." This reasoning, however, ignores the plain language of section 78A-6-508(1)(b), which requires a complete failure to communicateby phone, mail, or otherwise for six months. See Utah Code Ann. § 78A-6-508(1)(b). Use of a third-party intermediary falls squarely within the "otherwise" communicate language of section 78A-6-508(1)(b) and is not an unusual response where, as here, there is a prolonged and emotionally charged conflict between the parties, including efforts of the custodial parent to actively inhibit or prevent visits to which Father (and his family) were legally entitled.[1]
¶ 16 The juvenile court found that Father had utilized only "token efforts" to secure visitation in the face of Mother's hostility. This is problematic, however, because there is no token efforts exception to the six-month rule enunciated in section 78A-6-508(1)(b).[2] Rather, by the statute's plain language, each act of communication starts the clock anew for purposes of determining whether there has been a complete absence of contact. See id. (evidencing abandonment when a parent has "failed to communicate" for six months). Thus, it was error to conclude that an abandonment presumption had arisen pursuant to section 78A-6-508(1)(b), and it was error for the juvenile court to utilize section 78A-6-508(1)(b) as the sole basis for termination of Father's rights.
¶ 17 The majority opinion characterizes this application of the statute's plain language as "stilted" and asserts that, under such an interpretation, "minimal and superficial" communications with a child could "prevent a finding of abandonment." See supra ¶ 6. I disagree with both of these characterizations. Section 78A-6-508(1)(b)'s language is quite clear, requiring six months of failure to communicate in order to establish abandonment pursuant to that section. See Utah Code Ann. § 78A-6-508(1)(b). At most, my interpretation of the statute could be considered a strict one, but such an interpretation is certainly warranted by the gravity of that which is soughtthe termination of constitutionally-protected parental rights. See In re J.P., 648 P.2d 1364, 1372 (Utah 1982) ("A parent has a `fundamental right, protected by the [United States] Constitution, to sustain [a] relationship with his [or her] child.'" (quoting In re Walter B., 577 P.2d 119, 124 (Utah 1978) (plurality opinion))).
¶ 18 Moreover, limiting section 78A-6-508(1)(b) to its plain language places no barriers to a finding of abandonment in appropriate circumstances. A parent who makes only sporadic contact could still be found to have abandoned a child under the general "conscious disregard" test, see J.C.O. v. Anderson, 734 P.2d 458, 462 (Utah 1987), or under other various statutory definitions of abandonment, see Utah Code Ann. § 78A-6-508(1)(a), (c)-(d). However, the legislature made a specific judgment as to when noncommunication, standing alone, will establish abandonment, and we are bound to respect that judgment. Here, Father's acts of communication, however minimal or superficial, preclude a finding of abandonment for lack of communication pursuant to section 78A-6-508(1)(b), and the juvenile court relied on no other ground in terminating Father's parental rights.
¶ 19 Taken as a whole, the juvenile court's findings are also incompatible with a conclusion that the extremely limited contacts, and resulting lack of a strong relationship, between Father and Child are the result of Father's "conscious disregard," see J.C.O., 734 P.2d at 462, as opposed to Mother's active and passive efforts to sabotage and interfere with the relationship. The juvenile court found that Mother repeatedly and intentionally ignored Grandmother's attempts to arrange visitation. Additionally, the juvenile court findings reflect that Father began personally making appropriate demands for visitation in December 2007, which were wrongfully refused by Mother; that Mother had been found in contempt for this refusal; and that Mother "actively sought to prevent Father from seeing [Child]."
¶20 The juvenile court devoted an entire paragraph to describing Mother's actions in October 2007, when Grandmother visited with Child at his school:
[Mother's] response to [Grandmother's] visits with [Child] at Bloomington Elementary in October 2007 was inappropriate and childish and exposed an intent to prevent contact between [Father] and [Child]. The Court finds that [Mother] stated to a school employee that "I can't let [Father] into the child's life", or words to that effect. Mother confronted the school employees and [Grandmother]. She did so in the presence of the child. This action demonstrates Mother's total disregard for the best interest of the child. By all indications the child had a wonderful time visiting with his grandma. Grandma obviously loves him and reinforces him. Yet Mother, appalled at the thought that Father may resume his interest in the child, pitched a fit for the world to see. This conduct is the most demonstrative evidence of [Mother's] interference and confirms Father's claims that Mother was avoiding contact by his family.
Notably, this incident occurred during the very period of time that the juvenile court relied upon to find abandonment under section 78A-6-508(1)(b). See Utah Code Ann. § 78A-6-508(1)(b).
¶ 21 Although Father's own behavior in this case is hardly commendable, that is not the standard created by statute and case law against which a parent is judged for purposes of terminating parental rights. Here, the petition was brought by the custodial parent on grounds of abandonment, yet the juvenile court's own findings demonstrate that Mother repeatedly and intentionally sabotaged Father's personal and third-party attempts to communicate and visit with Child. I do not believe that a conclusion that Father's conduct evidences a "conscious disregard" and abandonment of the relationship with Child is justified under these circumstances.
¶ 22 In sum, I do not believe that the facts, as found by the juvenile court, are compatible with a legal conclusion that Father abandoned Child, and certainly not under the six-month failure-to-communicate provisions of Utah Code section 78A-6-508(1)(b), see Utah Code Ann. § 78A-6-508(1)(b). Since the juvenile court did not find any other ground for termination of Father's parental rights under section 78A-6-507,[3] I would reverse the juvenile court's order terminating Father's rights. Accordingly, I respectfully dissent from the majority opinion.
¶ 23 I also write to address a separate concern not directly related to the outcome of this case. I am troubled by the unexplained reversal in the position advocated by the Guardian ad Litem's Office (the GAL) between trial and appeal in this case. At trial, the GAL took the position that termination of Father's parental rights was not warranted. In closing arguments, the GAL summarized:
[Child] does have a dad. He has a biological dad. And I think he has a right to know his dad and to have a relationship with him. I think he is going to want that. If he doesn't now, maybe it's a little bit because mom has discouraged it. I believe mom has. Maybe not extremely, but I think she's at least not encouraged. I think he needs to have that relationship. And even if he's okay with dad being gone right now he won't always be okay with dad being gone. And it's not our job to take away the rights of a parent because somebody else thinks that another parent would be better for that child. That is not what we do in this court. And in a few years, [Child] is going to be all grown up. And he's going to see this situation a lot more clearly, more than any one of us can imagine. He's going to see it. And he's going to know what happened. He's going to find out. And he's going to hold somebody responsible unless we do the best thing. What is the best thing for [Child]? Along with him, I can't tell you. What's the best thing and what you can do, Your Honor. But I think what we need here is some kind ofno termination of parental rights. All parents required to get parental training and teach them to coparent, and maybe mom and dad having to mediate on some kind of agreement for consistent and cooperative visitation so this little boy can have the benefit of this great dad here [,step-dad,] and this wonderful mother and this dad who is going to learn how to be a great dad too. Three parents is always better than two if you can get them. I could have used more parents when I was a kid too. That's my feeling, Your Honor. And that's what I say.
¶ 24 The position advocated by the GAL at trial contrasts starkly with the GAL's position on appeal. On appeal, through different counsel, the GAL argues that the juvenile court's termination should be affirmed. Rather than advocating for the Child's best interests as they were identified at trial, the GAL's appellate brief focuses on and defers to the broad discretion afforded to juvenile courts. The GAL's appellate brief recasts the case as one "about the welfare of a nine[-]year-old child, whose father used his animosity toward mother to excuse his failure to maintain a parent-child relationship," and appears to simply adopt the juvenile court's conclusion that Child's "[b]est interests would not be served by maintaining residual rights."
¶ 25 The GAL provides no explanation for its change of position on appeal and no indication as to whether it believes that Child's best interests have changed since trial; what precipitated such a change; or, if Child's best interests have not changed, why the GAL is not seeking to vindicate those same best interests by seeking reversal of the termination order. In fact, the GAL's appellate brief does not speak to Child's best interests at all except to note and defend the juvenile court's determination that termination of Father's rights was in those best interests.
¶ 26 If it remains in Child's best interests (in the opinion of the GAL) that Father's parental rights not be terminated, then it would seem the duty of the GAL to advocate for that position on appeal. See Utah Code Ann. § 78A-6-902(3)(a) (2008) (stating that the GAL shall "represent the best interest of the minor in all proceedings"). If circumstances have changed such that the GAL now believes that termination is in Child's best interests, then it would seem incumbent upon the GAL to explain that change in circumstances in order to justify the change in the result advocated for.[4] Here, however, the GAL's appellate brief is completely at odds with its trial position with no explanation as to why. I believe that, in the future, the provision of such an explanation would not only make for a more persuasive legal position but would also help to further clarify the GAL's vital function of identifying and advocating for the best interests of each child assigned.
NOTES
[1] The juvenile court found that Father did not visit Child during this first period of abandonment due to the protective order Mother obtained after smelling marijuana smoke in Father's residence following Child's visit there. The juvenile court did not further focus on this period, having found that Father's resumption of communication with Child in 2006 mooted the prior lack of contact.
[2] Our conclusion that Father, in this case, has failed to prove that Mother interfered with his visitation is not intended to justify uncooperative behavior on the part of custodial parents.
[3] The fact that Father's outburst at a subsequent hearing influenced the juvenile court's ultimate decision does not present any impropriety given that trial courts are permitted, even at times expected, to "observe[] `facts' such as the witness's appearance and demeanor[] relevant to the application of the law." See Department of Human Servs. ex rel. Parker v. Irizarry, 945 P.2d 676, 681 (Utah 1997); State v. Abel, 600 P.2d 994, 997 (Utah 1979) ("[D]emeanor evidence has long been considered of great value to a trier of fact . . . ."); Hardcastle v. Hardcastle, 118 Utah 192, 221 P.2d 883, 887 (1950) (stating for purposes of determining the best interests of a child in a custody dispute, the trial court "had the benefit of seeing the litigants, observing their demeanor, and noting their hostility towards each other"). Furthermore, the belligerent outburst merely confirmed testimonial evidence already in the record: Father refused to talk to Mother.
[4] The juvenile court specifically noted that this was the second time that Father had responded to a petition to terminate his parental rights, and it concluded that the previous proceeding had not served as a "wake up call" as would be expected.
[5] The dissent also ignores the fact that the trial court explicitly found that, in his pattern of sporadic and inconsistent visitation, "Father has not shown the normal interest of a Father in relation to the child." Failure to show "the normal interest of a natural parent, without just cause" also constitutes "prima facie evidence of abandonment." Utah Code Ann. § 78A-6-508(1)(c) (2008).
[1] For example, in February 2004, Mother obtained a protective order prohibiting contact between Father and Child, and in July 2004, Mother filed her first petition to terminate Father's parental rights.
[2] "Token efforts" can serve as the basis for termination of parental rights under Utah Code section 78A-6-507, see Utah Code Ann. § 78A-6-507(1)(f) (2008), where a parent is not making a genuine good faith effort to remedy the problems necessitating removal of the child from the home, but the juvenile court did not rely on that subsection of the code. Rather, the juvenile court relied solely on abandonment as a basis for termination, see id. § 78A-6-507(1)(a), and decided that abandonment had occurred solely through application of the six-month failure-to-communicate provision of section 78A-6-508(1)(b), see id. § 78A-6-508(1)(b).
[3] I also disagree with the majority opinion's conclusion that the juvenile court's order may be affirmed on alternate grounds, such as that Father made only token efforts to communicate with Child or failed to show normal parental interest in Child. See Utah Code Ann. §§ 78A-6-507(1)(f)(i), 78A-6-508(1)(c). The juvenile court's sole ground for termination of Father's rights was his purported failure to communicate with Child for six months pursuant to section 78A-6-508(1)(b). See id. § 78A-65-08(1)(b). The juvenile court's tangential comments about token efforts and abnormal interest are not equivalent to specific findings of token efforts or abnormal interest as grounds for termination of Father's rights.

Further, Father's efforts in this case can only be judged in the context of Mother's active attempts to discourage and prevent a relationship between Father and Child. The majority opinion relies on In re adoption of B.O., 927 P.2d 202 (Utah Ct. App. 1996), for the proposition that infrequent visitation augmented by one phone call or card every four to six months constitutes "token efforts" justifying termination of parental rights. See supra ¶ 7. But there is a critical distinction between the two cases: In B.O., the child's custodians "encouraged B.O. to maintain a relationship with" the father, see 927 P.2d at 203. This is in sharp contrast to Mother's active efforts to discourage Father and Child's relationship in this case, and Father's efforts must be judged accordingly.
For this reason, I believe that any finding of token efforts or abnormal interest in this case should examine whether Father's efforts were token and abnormal as to permit termination in light of Mother's actions. In the absence of such findings, alternate grounds for terminating Father's rights are not "apparent on the record," Advanced Restoration LLC v. Priskos, 2005 UT App 505, ¶ 29, 126 P.3d 786, and I do not believe it would be appropriate for this court to affirm the juvenile court on such grounds.
[4] I am not suggesting that events occurring after the date of termination are relevant to the substantive question of whether a termination order was proper or that this court can consider facts outside of the record in reaching its substantive decisions.