**2013 UT App 56**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF B.H.-J. AND B.H., PERSONS
UNDER EIGHTEEN YEARS OF AGE.

B.H.,

*Appellant,*

*v.*

STATE OF UTAH,

*Appellee.*

Per Curiam Decision
No. 20120940-CA
Filed February 28, 2013

Fifth District Juvenile, Beaver Department
The Honorable Thomas M. Higbee
No. 1063277

J. Bryan Jackson, Attorney for Appellant
John E. Swallow and John M. Peterson, Attorneys for Appellee
Martha Pierce, Guardian ad Litem

Before JUDGES DAVIS, VOROS, and CHRISTIANSEN.

PER CURIAM:

¶1      B.H. (Father) appeals the termination of his parental rights. Father challenges the sufficiency of the evidence to support the findings that he abandoned the children, that he neglected the children, and that he was an unfit parent and made only token

efforts.[1] Father does not challenge the findings on the best interests of the children. We affirm.

¶2    "[I]n order to overturn the juvenile court's decision [to terminate parental rights], the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation and internal quotation marks omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *See id.* Therefore, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12.

¶3    The juvenile court found that Father was not a credible witness. We afford the juvenile court's decisions deference "based upon not only the court's opportunity to judge credibility first-hand, but also based on the juvenile court judges' special training,

---

1. After the State of Utah and the Guardian ad Litem filed responses to Father's petition on appeal, Father filed a Reply on Petition on Appeal from Child Welfare Proceeding. Rule 55 of the Utah Rules of Appellate Procedure describes the procedure for filing the petition on appeal, after which "[a]ny appellee, including the Guardian ad Litem, may file a response to the petition on appeal." Utah R. App. P. 56. Rule 58(a) of the Utah Rules of Appellate Procedure states that "[a]fter reviewing the petition on appeal, any response, and the record, the Court of Appeals may rule by opinion or memorandum decision" or "may set the case for full briefing." Because the rules pertaining to child welfare appeals do not authorize filing a reply memorandum replying to responses filed by an appellee or the Guardian ad Litem, we do not consider Father's reply memorandum.

experience and interest in this field." *In re E.R.*, 2001 UT App 66, ¶ 11 (citations and internal quotation marks omitted); *see also In re Z.D.*, 2006 UT 54, ¶ 52, 147 P.3d 401 (Wilkins, J., concurring) ("It is usually enough to say, in findings, that the trial judge does not find the witness or the evidence presented to be believable, and to append a few words indicating the most obvious reason."). Father and his sister (with whom he lived) testified that Father made daily efforts to contact the children's mother for the six months beginning in the summer of 2010 when the mother and children moved to Utah and that he tried to contact the mother a couple of times per week for one year after that initial six-month period. The juvenile court found that testimony not credible, stating,

> Their testimony is not credible in that after the children came into [Division of Child and Family Services (DCFS)] custody, for the next six months, when he absolutely knew where the children were, he only tried twice to contact the children and even though he was offered visits, he did not visit. Surely if he had tried as hard as he said he did when the children were in the care of the Mother, he would have continued those efforts when he knew he could always reach them and could always reach someone (DCFS) who knew how the kids were doing. Since he didn't make any efforts after the kids came into care, the court finds he only made minimal efforts before they came into care.

In contrast, the juvenile court found the testimony of DCFS caseworker to be credible. The caseworker testified that during the six months between the time that the children came into DCFS custody and the termination trial, Father had five contacts with DCFS, three of which were initiated by DCFS. He was offered visits, but he did not attend any visits. We defer to the juvenile court's credibility determination.

¶4      Father challenges the sufficiency of the evidence to support the findings that he abandoned the children. The juvenile court found two separate periods of abandonment. First, the court found that Father failed to communicate with the children, support them, or attempt to maintain a bond during the six-month period from January 1, 2012, to July 1, 2012, which was after the children came into the custody of the State. Second, the juvenile court found that during the eighteen-month period from July 2010 through December 2011, Father also failed to communicate with the children, support them, or attempt to maintain a bond. In seeking to rebut the prima facie case, Father argued that he was young and inexperienced in life, that his work interfered with his ability to visit or make contact with the children, and that the children's mother prevented him from contact during the eighteen-month period from July 2010 until the children came into the custody of the State in January 2012.

¶5      Abandonment is demonstrated by "conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." *In re T.E.*, 2011 UT 51, ¶ 20, 266 P.3d 739 (citation and internal quotation marks omitted). Abandonment is proven by satisfaction of a two-part test. First, the evidence "must demonstrate that the . . . parent has engaged in conduct that implies a conscious disregard for his or her parental obligations." *Id.* Second, the evidence "must show that the . . . parent's conduct led to the destruction of the parent-child relationship." *Id.* Furthermore, Utah Code section 78A-6-508(1)(b) provides that it is prima facie evidence of abandonment if the parent "failed to communicate with the child by mail, telephone, or otherwise for six months." Utah Code Ann. § 78A-6-508(1)(b) (LexisNexis 2012). Proof of a prima facie case creates a presumption that the parent has consciously disregarded parental obligations and that the conduct led to destruction of the parent-child relationship. *See In re T.E.*, 2011 UT 51, ¶ 21. "In rebutting the presumption, . . . parents may present any evidence indicating that they did not consciously disregard their parental obligations or that their conduct did not

lead to the destruction of the parent-child relationship." *Id.* ¶ 22. The juvenile court then considers the totality of the evidence to determine if there is still clear and convincing evidence to support a finding of abandonment. *See id*. ¶ 23. The parent is required to produce only enough evidence to persuade the juvenile court that abandonment has not been established by clear and convincing evidence. *See id.*

¶6     As required by *In re T.E.*, the juvenile court found that after consideration of all the evidence, there was still proof demonstrating by clear and convincing evidence that Father abandoned the children. Specifically, the court found that for a two-year period, Father had virtually no contact with the children and, as a result, the children had no bond or attachment with him whatsoever. Father's limited efforts at contact did not overcome the prima facie evidence of abandonment. *See id*. ¶ 27 ("If a . . . parent's attempted communications do not reach the child, there has been no exchange of information with the child and therefore no communication under the statute."). Father did not visit; send cards, letters or emails; inquire about the children; or send them birthday or Christmas presents. The court further found that although Father had reason to know that the children were at risk in the care of their mother, he failed to show the normal interest of a parent by failing to seek information about their welfare. Under the circumstances, the juvenile court's findings supporting the ground of abandonment are amply supported by the evidence.

¶7     Because establishment of any one of the grounds enumerated in section 78A-6-507 is sufficient to support termination, and Father does not challenge the sufficiency of the evidence to support the best interests findings, it is not necessary to consider Father's challenge to the remaining grounds. *See* Utah Code Ann. § 78A-6-5-07 (stating that the court may terminate parental rights if the court finds any one of the enumerated grounds). However, we conclude that the same evidence that supported the ground of abandonment is sufficient to support the juvenile court's determination that Father made only token efforts to support or communicate with the

children, to prevent their neglect, to eliminate the risk of serious harm to the children, or to avoid being an unfit parent. *Id.* § 78A-6-507(1)(f).

¶8     Because "a foundation for the juvenile court's decision exists in the evidence," we affirm the court's decision terminating parental rights. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.

——————